**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEON WOODSON, : | Civil Action No. 05-3368 (WJM) |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | **O P I N I O N** |
| GLEN FERGUSON, et al., : | |
| : | |
| Defendants. : | |

APPEARANCES:

    LEON WOODSON, Plaintiff, pro se
    Northern Regional Unit
    30-35 Hackensack Avenue
    P.O. Box 669
    Kearny, New Jersey  07032

**MARTINI**, District Judge

    Plaintiff, Leon Woodson ("Woodson"), currently confined at the Northern Regional Unit ("NRU") in Kearny, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983.[1]  Based on his affidavit of indigence, the Court will grant Woodson's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

---

[1] Woodson is a civilly-committed person pursuant to an order of involuntary commitment under the New Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-21.1, et seq.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.[2]  For the reasons stated below, the Court finds that the Complaint should be dismissed.[3]

## I. BACKGROUND

The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review.

Woodson brings this § 1983 action against defendants, Dr. Glenn Ferguson and Dr. Merrill Mean.  Dr. Ferguson is the Clinical Director at the Special Treatment Unit ("STU") in the NRU in Kearny, New Jersey.  Dr. Mean is a psychologist and a member of plaintiff's treatment team at the STU.

Woodson alleges that, on November 19, 2002, Dr. Ferguson violated plaintiff's Fourteenth Amendment rights by failing to

---

[2]  The express langauge of 28 U.S.C. § 1915(e)(2) states:

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that -

(A)  the allegation of poverty is untrue; or
(B)  the action or appeal-
(i)  is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief."

[3]  Plaintiff also filed an application for appointment of counsel, which is rendered moot by dismissal of his Complaint.

protect Woodson from harm.  Specifically, Woodson was assaulted on that date by three residents as Woodson lay in bed watching television.  He was taken to St. Francis Hospital for treatment of his injuries.  Woodson alleges that Dr. Ferguson was aware of the residents' violent behavior from past disciplinary proceedings, but failed to take the appropriate safety and preventative measures to keep such conduct from happening again. Thereafter, Woodson was placed on involuntary protective custody and sent to a lock-up cage.  (Complaint, ¶¶ 4b, 6).

Woodson also relates that he came to the STU in 1999.  At that time, he had participated in a treatment orientation with Dr. Ferguson in which Dr. Ferguson handed out lessons to the residents.  Woodson looked at the lesson and attempted to hand it back to Dr. Ferguson.  Dr. Ferguson gave a forceful push of his hand, as a show of force to plaintiff.  (Compl., ¶ 4b).

Next, Woodson alleges that Dr. Mean unlawfully restrained plaintiff and placed him in a stripped room in the lock-up area on November 24, 2003.  Woodson contends that Dr. Mean's actions were done with deliberate indifference to plaintiff's civil rights, and for the purpose of punishment without reason. (Compl., ¶¶ 4c, 6).

Woodson seeks monetary damages in the amount of $50,000.00. He also asserts supplemental state law claims under New Jersey's civil rights act for civilly committed persons, N.J.S.A. 30:4-24;

3

New Jersey's Patients Bill of Rights, N.J.S.A. 30:4-24.2; medical negligence; and violations of New Jersey's constitutional right to adequate mental health treatment.  Finally, Woodson asserts a general claim under the American with Disabilities Act ("ADA") and Rehabilitation Act based on defendant's failure to reasonably accommodate plaintiff's handicap and denying treatment for health and mental illnesses.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV. ANALYSIS

A. Denial of Due Process Claim

Woodson is an involuntarily committed sexually violent predator. The New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 et seq., establishes an involuntary civil commitment procedure for a sexually violent predator, defined by the act as "a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not

confined in a secure facility for control, care and treatment," N.J.S.A. 30:4-27.26.  Further, pursuant to the act, the Department of Corrections bears responsibility for the operation of any facility designated for the custody, care, and treatment of sexually violent predators, and the Department is required, with certain exceptions, to house such committed sexually violent predators separately from offenders in the custody of the Department of Corrections.  N.J.S.A. 30:4-27.34(a).  The Division of Mental Health Services in the Department of Human Services is required to provide or arrange for treatment appropriately tailored to address the specific needs of sexually violent predators.  N.J.S.A. 30:4-27.34(b).

Persons committed under the Sexually Violent Predator Act are "patients at a secure treatment facility, not inmates."  In re Commitments of M.G. and D.C., 331 N.J. Super. 365, 751 A.2d 1101, 1105 (N.J.Super. App. Div. 2000).

> The treatment program is designed to provide comprehensive treatment services and is staffed by psychologists, psychiatrists, social workers, substance abuse counselors and other staff members with specialized training in the assessment and treatment of sexual deviance and personality disorders.
>
> According to the State, the Kearny facility is designed to provide a non-judgmental, non-punitive therapeutic treatment program in a setting that is controlled, safe, and conducive to the treatment process.  There are, however, some marked differences between the facility and other therapeutic placement facilities.  Persons committed to Kearny are housed in locked rooms and monitored by uniformed correctional officers, some carrying weapons, who are employed by

> the Department of Corrections.  Residents leaving the
> facility are shackled with handcuffs to waist chains
> and also with ankle cuffs.

751 A.2d at 1105.  See also N.J.S.A. 30:4-27.34(b) (persons committed under the Sexually Violent Predator Act are entitled to "treatment appropriately tailored to address the specific needs of sexually violent predators").

"Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." Foucha v. Louisiana, 504 U.S. 71, 79 (1992) (citing Jones v. United States, 463 U.S. 354, 368 (1983); Jackson v. Indiana, 406 U.S. 715, 738 (1972)).  In addition, "due process requires that the conditions and duration of confinement under [a sexual predator commitment act] bear some reasonable relation to the purpose for which persons are committed."  Seling v. Young, 531 U.S. 250, 265 (2001) (citing Foucha v. Louisiana, 504 U.S. 71 at 79; Youngberg v. Romeo, 457 U.S. 307, 324 (1982); and Jackson v. Indiana, 406 U.S. 715, 738 (1972)).

Thus, involuntarily committed mentally retarded persons retain substantive liberty interests in adequate food, shelter, clothing, and medical care, Youngberg, 457 U.S. at 315, as well as in safety, freedom of movement, and minimally adequate or reasonable training to ensure safety and freedom from undue restraint, id. at 317-19.  These interests, however, are not absolute.  Id. at 319-20.  "In determining whether a substantive

right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." Id. at 320 (quoting Poe v. Ullman, 367 U.S. 497, 542 (1961)(Harlan, J., dissenting)).  In seeking this balance, a court must weigh "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty." Id.  In Youngberg, balancing the interests of the State against the rights of involuntarily committed mentally retarded persons to reasonable conditions of safety and freedom from unreasonable restraints, the Court adopted the standard advocated by a concurring judge, below, that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised.  It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." 487 U.S. at 321 (quoting 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, C.J., concurring)).  Thus, even when treatment decisions violate a protected liberty interest, such decisions made by a qualified professional are presumptively valid;

> liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.  In an action for damages against a professional in his individual capacity, however, the professional will not be liable if he was unable to satisfy his normal professional standards because of budgetary

> constraints; in such a situation, good-faith immunity would bar liability.

457 U.S. at 323 (footnote omitted). This standard is applicable to the decision to forcibly administer psychotropic drugs against the will of an involuntarily committed mental patient. See Rennie v. Klein, 720 F.2d 266 (3d Cir. 1983).

Taking account of the provisions of the New Jersey Sexually Violent Predator Act, as interpreted by the New Jersey Superior Court, Appellate Division, that persons committed under the act are patients, not inmates, the Youngberg "professional judgment" standard should apply to treatment decisions that allegedly violate such persons' constitutional rights. But see Martyr v. Mazur-Hart, 789 F. Supp. 1081 (D. Oregon 1992) (holding that confinement of person committed to the custody of state hospital after being found "not guilty by reason of insanity" is analogous to the confinement of a felon in prison, and analyzing First Amendment and substantive due process claims arising out of mail censorship under standards applicable to convicted prisoners).

Here, Woodson's violation of due process claim involves several allegations.[4] Woodson takes issue with his restraint and

---

[4] Woodson alleges three separate due process violations. The first, as discussed in this section, involves an incident occurring on November 24, 2003. Woodson also alleges that Dr. Ferguson violated his due process rights when he pushed plaintiff in 1999 after plaintiff tried to give the doctor his orientation handout. The third allegation involves an event that occurred on November 19, 2002, in which defendants failed to protect plaintiff from harm from other residents. These last two

lock-up on November 24, 2003, which allegedly imposed "punitive prison like conditions of confinement ... in a regiman [sic] which is identical to that imposed on felons in prison." (Complaint, ¶ 6). Woodson does not allege that excessive force was used, that he sustained any injuries as a result of the restraint, or that the restraint lasted more than a single day. The Complaint further lacks any allegations that such restraint and lock-up incidents are recurrent with Woodson.

It is not clear whether Woodson's lock-up on November 23, 2003 was a treatment decision or a disciplinary action. However, it is clear that plaintiff is alleging that the defendant's action in restraining him in this manner was meant as "punishment". For detainees asserting a due process claim under the Fourteenth Amendment, which is analogous here, there exists a minimum degree of "punishment" which must be exceeded before a constitutional violation may be found; "de minimis" punishment does not offend the Constitution. Bell v. Wolfish, 441 U.S. 520, 539 n. 21 (1979). In Wolfish, the Supreme Court set forth the standard to be applied in analyzing whether a detainee has been deprived of liberty without due process:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether

---

allegations are time-barred, and are discussed in Section IV.B of this Opinion, infra.

> those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. ...

Wolfish, 441 U.S. at 535-39 (citations omitted); see also Fuentes v. Wagner, 206 F.3d 335, 341-42 (3d Cir.), cert. denied, 531 U.S. 821 (2000). The Supreme Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are

12

discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Wolfish, 441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  Id. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

As mentioned above, persons committed under the Sexually Violent Predator Act are confined in a secure treatment facility, in locked rooms monitored by uniformed corrections officers.  See In re Commitments of M.G. and D.C., 751 A.2d at 1105.  Consequently, while specialized training and therapeutic treatment programs are provided, the facility is a controlled environment with legitimate security concerns.  Thus, even if Woodson's lock-up on November 24, 2003 was punitive as alleged, plaintiff's allegations fail to state a claim of constitutional magnitude under the due process clause of the Fourteenth Amendment.  Woodson alleges no force or prolonged detention.  He alleges no injury or harm sustained as a result of the defendant's action in restraining him for one day.  The Complaint does not demonstrate that the defendants' action on November 24, 2003, in restraining and locking up plaintiff without use of force for a single day, was a grossly exaggerated response. Therefore, Woodson's Fourteenth Amendment due process claim will be dismissed for failure to state a claim.

B.   Failure to Protect Claim is Time-Barred

Next, Woodson recounts that, on November 19, 2002, he was assaulted by other residents.  Woodson states that defendants knew or should have known of the violent behavior of the person who attacked plaintiff, but the defendants failed to protect plaintiff from harm.  These allegations, if true, may be sufficient to allow the claim to proceed; however, it appears on the face of the Complaint that this claim is time-barred.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted).  Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint.  See, e.g., Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hall v. Geary County Bd. of County Comm'rs, 12 Fed. Appx. 855 (10th Cir. 2001) (unpub.) (applying Pino to current § 1915(e)); Rounds v. Baker, 141 F.3d

1170 (8th Cir. 1998)(unpub.) (same); <u>Johnstone v. United States</u>, 980 F.Supp. 148 (E.D. Pa. 1997) (same).

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions.  Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. S<small>TAT</small>. A<small>NN</small>. § 2A:14-2, governs plaintiff's claims.  <u>See</u> <u>Montgomery v. DeSimone</u>, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); <u>Cito v. Bridgewater Township Police Dept.</u>, 892 F.2d 23, 25 (3d Cir. 1989).

Here, the statute of limitations began to run, at the latest, when the incident occurred on November 19, 2002.  <u>See</u> <u>Sameric Corp. of Delaware v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998) (a section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which the action is based).  This Complaint was received by the Court on or about July 1, 2005, more than nine months after Woodson's the two-year statute of limitations had expired.  Therefore, any potential § 1983 claim based on this event is time-barred.

Moreover, Woodson has not asserted facts suggesting any basis for statutory tolling.  <u>See</u>, <u>e.g.</u>, N.J. S<small>TAT</small>. A<small>NN</small>. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable).  New Jersey law also permits "equitable tolling" where

"the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. See Freeman v. State, 347 N.J. Super. 11, 31 (N.J. Super. App. Div.) (citations omitted), certif. denied, 172 N.J. 178 (2002). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Id.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

Id. n.9.

Here, the Complaint alleges no extraordinary circumstances that would permit equitable tolling under either New Jersey or federal law. There are no allegations that Woodson was unaware

of his rights in 2002, nor are there any allegations that defendants prevented Woodson in any way from timely filing his Complaint.  Therefore, because it is clear on the face of the Complaint that the failure to protect claim based on an incident occurring on November 19, 2002 is time-barred, and no extraordinary circumstances are alleged to warrant equitable tolling, this claim must be dismissed with prejudice as untimely.[5]

C.   ADA and Rehabilitation Act Claims

Title II of the ADA provides that qualified disabled persons shall not "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  This provision of the ADA applies to services, programs, and activities provided within correctional institutions.  Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998).

To state a claim under Title II of the ADA, Woodson must show that:  "(1) he is a qualified person with a disability; (2) he was either excluded from participation in or denied the

---

[5] Woodson also alleges a single incident where defendant, Dr. Ferguson pushed plaintiff with his hand to stop plaintiff from turning in a completed lesson.  This event occurred in 1999, and is therefore time-barred.  Alternatively, the Court notes that this single incident of an innocuous push without injury or harm sustained by plaintiff does not rise to the level of a constitutional violation.  See this Opinion, supra, at pp. 10-13.

17

benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Calloway v. Boro of Glassboro Dep't of Police, 89 F. Supp. 2d 543, 551 (D.N.J. 2000). Applying the above factors, the Court concludes that Woodson has not alleged facts sufficient to state a claim under the ADA.[6] Woodson's civil confinement under the SVPA does not *ipso facto* render him a qualified individual with a disability under the ADA. Disability means a "physical or mental impairment that substantially limits one or more of the major life activities of an individual." 28 C.F.R. § 35.104. The term disability does not include "[t]ransvestism, transexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders." 28 C.F.R. § 35.104, "Disability" at ¶ 5(I). See also Bay Area Addiction Research and Treatment, Inc. V. City of Antioch, 179 F.3d 725,

---

[6] Moreover, Woodson's ADA claim is not cognizable because he brings this action against individual defendants rather than a public entity. Title II of the ADA prohibits discrimination in services, programs, or activities of a "public entity" or "discrimination by any such entity." 42 U.S.C. § 12132. This section clearly does not include individuals. See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)(en banc), cert. dismissed, Alsbrook v. Arkansas, 529 U.S. 1001 (2000). Thus, the individual defendants herein cannot be held liable for violations of Title II of the ADA. See Calloway, 89 F. Supp. 2d at 557 and Yeskey v. Commonwealth of Pennsylvania, 76 F. Supp. 2d 572, 574-75 (M.D.Pa. 1999).

735 (9th Cir. 1999)(persons who pose a significant risk to the health or safety of others that cannot be ameliorated by means of a reasonable modification are not qualified individuals under § 12131).

Likewise, plaintiff cannot establish a claim under Section 504 of the Rehabilitation Act.  Under the Rehabilitation Act, Woodson must prove that (1) he is a "individual with a disability" under the Act; (2) he is otherwise qualified for the services sought; (3) he is denied from the services sought solely by reason of his disability; and (4) the program or activity in question receives federal financial assistance.  See 29 U.S.C. § 794(a).  As with the ADA, the term "individual with a disability", under the Rehabilitation Act, does not include a person on the basis of "transvestism, transexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders." 29 U.S.C. § 705(20)(E)(I).

Consequently, Woodson is unable to assert a claim under either the ADA or Rehabilitation Act because he cannot show that he is an individual with a disability covered under these acts.

D.   The Remaining State Law Claims

Woodson also alleges various supplemental state law claims in his Complaint.  As the federal claims will be dismissed for failure to state a claim, this Court declines to exercise

supplemental jurisdiction over plaintiff's remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3).  The Court does not purport to make any ruling or opinion as to the viability of plaintiff's claims sounding in state law.

## CONCLUSION

For the reasons set forth above, the Complaint will be dismissed in its entirety as against all defendants for failure to state a claim.  Woodson's application for appointment of counsel is denied as moot.  An appropriate Order accompanies this Opinion.


                                s/William J. Martini

                                _____
                                WILLIAM J. MARTINI
                                United States District Judge

DATED:9/23/05